Arnold B. Calmann (abc@saiber.com)
Jakob B. Halpern (jbh@saiber.com)
**SAIBER LLC**
One Gateway Center
10th Floor, Suite 1000
Newark, New Jersey 07102
Tel.: 973.622.3333
Fax: 973.286.2465

Dennies Varughese, Pharm.D. (dvarughe@sternekessler.com)
Monica Riva Talley (mtalley@sternekessler.com)
Dana N. Justus (djustus@sternekessler.com)
Charles T. Wysocki (cwysocki@sternekessler.com)
**STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.**
1100 New York Ave., NW, Suite 600
Washington, D.C. 20005
Tel.: 202.371.2600
Fax: 202.371.2540

*Attorneys for Plaintiff*
*JUUL LABS, INC.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUUL LABS, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>JUUL MONSTER, LLP; K & R PRODUCTS, LLP; STATUS DISTRIBUTION LLC; STATUS VAPES LLC; KRISTEN VANORSKI; RYAN DOKA; CRAIG DOKA; JAMES DOKA; JACLYN QUINTO; and JOHN DOES 1 – 50,<br><br>                    Defendants. | Civil Action No. _____<br><br>**Hon.**<br><br><br>**VERIFIED COMPLAINT**<br>**(JURY DEMAND)** |

Plaintiff Juul Labs, Inc. ("JLI"), by its attorneys, for its complaint against Juul Monster, LLP ("Juul Monster"), a New Jersey limited liability partnership located in Whippany, New Jersey; K & R Products, LLP ("K & R Products"), a New Jersey limited liability partnership

located in Oak Ridge, New Jersey; Status Distribution LLC ("Status Distribution"), a New Jersey limited liability company located in Oak Ridge, New Jersey; Status Vapes LLC ("Status Vapes"), a New Jersey limited liability company located in Morristown, New Jersey; Kristen Vanorski ("Vanorski"), an individual believed to be residing in or near Whippany, New Jersey; Ryan Doka, an individual believed to be residing in or near Whippany, New Jersey; Craig Doka, an individual believed to be residing in or near Oak Ridge, New Jersey; James Doka, an individual believed to be residing in or near Oak Ridge, New Jersey; Jaclyn Quinto ("Quinto"), an individual believed to be residing in or near Highland Lakes, New Jersey; and John Does 1 – 50 ("John Does") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action by Plaintiff Juul Labs, Inc. against Defendants Juul Monster, K & R Products, Status Distribution, Status Vapes, Kristen Vanorski, Ryan Doka, Craig Doka, James Doka, Jaclyn Quinto, and John Does 1 – 50 for trademark infringement, cybersquatting, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, 1125(a), and 1125(d); trademark infringement and unfair competition under N.J.S.A. 56:4-1 and state common law; tortious interference with economic advantage; unjust enrichment; fraudulent misrepresentation; and negligent misrepresentation.

2.      Plaintiff JLI is a pioneer in Electronic Nicotine Delivery Systems (*i.e.*, "ENDS") and related technologies, having spent years and invested millions of dollars to develop and introduce into the market in 2015 its branded, innovative, and breakthrough ENDS product. The JUUL-branded system is intended for adult smokers seeking a nicotine alternative to traditional combustible cigarettes.

3.      The JUUL system is comprised of two components: (i) a device and (ii) disposable pods ("JUULpods") prefilled with a proprietary mixture of vaporizer carriers, nicotine salt extracts, and flavoring (together, "e-liquid"). When a user inserts a JUULpod into the device and inhales through the mouthpiece of the system, the device rapidly heats the e-liquid in the pod, aerosolizing it to allow the user to inhale a "puff" of the vaporized e-liquid. The JUUL

system has been widely adopted and has attained tremendous commercial success and acclaim, currently garnering nearly 76% of the overall e-cigarette market[1] and posting more than $1 billion in revenue in 2018.[2]

4.      Defendants sell nicotine-related products with a marketing strategy seemingly designed to create a false association with JLI and simultaneously target a youth demographic. Seeking to free ride on JLI's success and misappropriate JLI's marketplace identity, Defendants have collectively engaged in the unauthorized and unlawful promotion, distribution, and sale of JLI and third-party vaporizer devices and pods under the misleading and infringing business and trade names "JUUL MONSTER" and "JUUL MEGA STORE," and the cartoonish Juul Monster logo, who is depicted using a JUUL device. Defendants have also applied to register a black and white version of the Juul Monster logo with the U.S. Patent and Trademark Office.

   

5.      As discussed further below, not only do Defendants irresponsibly target children with their marketing strategy, Defendants are using JLI's own branding to do so. Defendants' use of a cartoon logo clearly appeals to children and teens below the minimum legal age to purchase e-cigarette products. Such advertising practices violate tobacco laws and public policy; they also undermine JLI's ongoing youth-prevention efforts. The JUUL MONSTER name and logo design are collectively referred to herein as the "Juul Monster Trademarks." Defendants have also

---

[1] *See* Richard Craver, *Juul ends 2018 with 76 percent market share*, WINSTON-SALEM JOURNAL (Jan. 8, 2019), https://www.journalnow.com/business/juul-ends-with-percent-market-share/article_6f50f427-19ec-50be-8b0c-d3df18d08759.html.

[2] *See* Uday Sampath Kumar, *Altria says Juul sales skyrocket to $1 billion in 2018*, REUTERS.COM (Jan. 31, 2019), https://www.reuters.com/article/us-altria-group-juul/altria-says-juul-sales-quintupled-to-1-billion-in-2018-idUSKCN1PP1YJ.

registered (at least) two domain names that include JLI's federally-registered JUUL trademark – juulmonster.com and juulmegastore.com – in an attempt to impersonate JLI or create a misleading impression that it is affiliated with JLI.

6.      As discussed in detail below, Defendants' activities under the Juul Monster Trademarks violate JLI's federal and state trademark rights and constitute unfair competition under federal and state law.

7.      Additionally, while the known named Defendants in this case have committed infringing acts by promoting, distributing, and/or selling products under the infringing Juul Monster Trademarks, this Complaint also names certain as-yet unidentified "John Does" who, upon information and belief, are responsible for the additional promotion, distribution, and/or sale of products under these infringing marks.

8.      Plaintiff JLI is forced to file this action to combat these infringers who are trading upon JLI's market-leader reputation in ENDS. Defendants knowingly and unlawfully adopted and are using trademarks that are likely to mislead consumers into believing that their products are associated or affiliated with JLI.

## THE PARTIES

9.      Plaintiff **Juul Labs, Inc.** is a corporation organized in the State of Delaware, with its principal place of business at 560 20th Street, San Francisco, California 94107.

10.      Upon information and belief, Defendant **Juul Monster** is a New Jersey limited liability partnership with a mailing address of 167 Park Avenue, Whippany, New Jersey 07981.

11.      Upon information and belief, Defendant **K & R Products** is a New Jersey limited liability partnership with a mailing address of 170 School House Road, Oak Ridge, New Jersey 07438.

12.      Upon information and belief, Defendant **Status Distribution** is a New Jersey limited liability company with a mailing address of 170 School House Road, Oak Ridge, New Jersey 07438.

13.     Upon information and belief, Defendant **Status Vapes** is a New Jersey limited liability company with a mailing address of 4 Wilmont Street, Unit C, Morristown, New Jersey 07438.

14.     Upon information and belief, Defendant **Kristen Vanorski** is an individual with a believed mailing address of 167 Park Avenue, Whippany, New Jersey 07981.

15.     Upon information and belief, Defendant **Ryan Doka** is an individual with a believed mailing address of 167 Park Avenue, Whippany, New Jersey 07981.

16.     Upon information and belief, Defendant **Craig Doka** is an individual with a believed mailing address of 170 School House Road, Oak Ridge, New Jersey 07438.

17.     Upon information and belief, Defendant **James Doka** is an individual with a believed mailing address of 170 School House Road, Oak Ridge, New Jersey 07438.

18.     Upon information and belief, Defendant **Jaclyn Quinto** is an individual with a believed mailing address of 16 Wawayanda Road, Highland Lakes, New Jersey 07438.

19.     Upon information and belief, Defendants **John Does 1 – 50** are the presently unknown other companies and/or individuals involved in the knowing and unlawful promotion, distribution, and/or sale of products under the infringing Juul Monster Trademarks.

## JURISDICTION AND VENUE

20.     This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1338(a)-(b) (actions arising under an Act of Congress relating to trademarks), 28 U.S.C. § 1331 (actions arising under the laws of the United States), 28 U.S.C. § 1332 (actions involving diversity of citizenship), 15 U.S.C. § 1121 (actions arising under the Lanham Act), and 15 U.S.C. § 1051 *et seq.* (provisions of the Lanham Act). This Court has supplemental jurisdiction over the claims in this Complaint that arise under statutory and common law pursuant to 28 U.S.C. § 1367(a).

21.     JLI's claims against Defendants for trademark infringement, unfair competition, and cybersquatting are based on: **(i)** Defendants' misuse of JLI's trademarks to market and sell e-cigarette products under the misleading and infringing Juul Monster Trademarks; **(ii)** upon

information and belief, Defendants' promotion and sale of products under the infringing Juul Monster Trademarks to consumers in this District; **(iii)** on information and belief, Defendants' use of instrumentalities in the District to promote and sell e-cigarette products under the infringing Juul Monster Trademarks; and, **(iv)** on information and belief, Defendants' registration and use of domain names incorporating JLI's JUUL trademark.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including the State of New Jersey, through Defendants' known distribution and sale of e-cigarette products *via* (at least) the Juul Monster website located at www.juulmonster.com, the website located at www.hotpodz.com, the website located at www.thepodking.com, and the website located at www.juulmegastore.com. Specifically, upon information and belief, all of the known Defendants are located in this District, and Defendants' infringing activities are targeted to and sales are made to residents of New Jersey. Defendants are committing tortious acts, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in this District (and nationwide).

## PLAINTIFF'S TRADEMARKS

### BACKGROUND

23.     Plaintiff JLI's revolutionary JUUL system is the best-selling electronic nicotine delivery system on the market, currently enjoying nearly 76% of the market share of the total e-cigarette category in the United States.[3] JLI's current market share is a direct result of its superior proprietary technology, and the satisfying and unique user experience it offers the adult smoker. Vaping360 ("The Home of Vaping") ranked the JUUL system first in its 2017 and 2018 Best E-Cigarettes buyers guides and notes its "innovative technology and performance" and

---

[3] *See supra* footnote 1.

high-tech, modern design.[4] JLI's trade dress is nonfunctional and only used to identify the source of the products.

24.     The JUUL vaporizer system entered the market in April 2015. The system is designed for and directed to existing adult smokers who seek a real alternative to smoking cigarettes. As noted above, the current JUUL system is comprised of a main device that houses the electronics of the system, and an individual pod containing JLI's proprietary e-liquid that is vaporized when the user takes a puff. Each 5% JUULpod contains approximately the same amount of nicotine as one would find in one pack of cigarettes, and delivers approximately 200 puffs under normal use.

25.     JLI's success and market share reflect JLI's ability to provide adult smokers with a true alternative to using traditional cigarettes. JLI's innovative system and its proprietary e-liquid formulations combine to provide a highly-satisfactory user experience. This experience is backed-up by JLI's high quality product and excellent customer service, which has already engendered significant brand loyalty and marketplace awareness. JLI's distinctive trademarks communicate this value to consumers, are associated exclusively with JLI's products, and embody the significant cache and goodwill associated with the JUUL brand.

26.     JLI maintains strict quality control over its products. This commitment includes working closely with JLI's U.S.-based contract manufacturers to fill the JUULpods with JLI's proprietary e-liquid formulations and then package the finished products. Before distribution, JLI's products go through an extensive quality control regime, including rigorous testing.

27.     JLI's success in the United States drew and continues to draw the attention of counterfeiters and intellectual property infringers everywhere, resulting in widespread counterfeiting and infringement of JLI's intellectual property. Consequently, JLI has been forced to establish comprehensive anti-counterfeiting and brand protection programs to investigate and

---

[4] *See Best E-Cigarettes*, VAPING360 (July 20, 2018), https://vaping360.com/best-vape-starter-kits/e-cigarettes/ and *JUUL Review: See Why It's the Most Popular Vape*, VAPING360 (July 20, 2018), https://vaping360.com/juul/juul-vapor-review/.

take action against those promoting suspicious vaporizers and pods that are marketed by misusing JLI's valuable brands and technology. And while policing JLI's intellectual property rights is essential to JLI as it seeks to protect its brand value and consumer trust, it also critically reinforces JLI's desire to both protect its users by eliminating dangerous infringing and counterfeit ENDS products of unknown origin, and to keep ENDS products out of the hands of underage users.

## THE JUUL TRADEMARKS

28.     JLI uses and owns the following federally-registered and pending trademarks to identify its vaporizer devices and refill pods (the "**JLI Trademarks**"), as detailed below:

| Reg. No. | Mark | Reg. Date | First Use in Commerce | Goods |
|---|---|---|---|---|
| 4818664 | **JUUL** | Sept. 22, 2015 | June 1, 2015 | Class 1: Nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes.<br><br>Class 30: Electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes.<br><br>Class 34: Electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |
| 4898257 | JUUL | Feb. 9, 2016 | June 1, 2015 | Class 34: nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for |

| | | | | |
|---|---|---|---|---|
| | | | | electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |
| 5299392 | | Oct. 3, 2017 | March 28, 2016 | Class 34: nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes |

29.    The above U.S. registrations for the JLI Trademarks are valid, subsisting, and in full force and effect. True and correct "status" copies of these registrations, obtained from the Trademark Status Document Retrieval ("TSDR") database of the United States Patent and Trademark Office, are attached hereto as **Exhibit 1**. The registrations constitute *prima facie* evidence of their validity and of JLI's exclusive right to use these trademarks pursuant to 15 U.S.C. § 1057(b).

30.    JLI's distinctive trademarks communicate the source of its high-quality vaporizers and pods to its customers. JLI has expended significant effort in developing its trademarks in the United States,[5] including over $61 million in promotional and marketing activities since 2016. As a result of such efforts to distinguish JLI's branding from others in the marketplace, and the significant press and cachet surrounding the JUUL brand, the consuming public exclusively associates the JLI Trademarks with JLI.

_____

[5] *Id.*

31.     The JLI Trademarks are inherently distinctive, and have acquired considerable brand loyalty through JLI's sales, including from direct word-of-mouth promotion by consumers. Indeed, according to a recent article from CNBC, JLI is "dominating the [e-cigarette] industry."[6] In addition, JLI has expended significant effort in developing the JLI Trademarks in the United States. The market reputation and consumer goodwill associated with these rights are of incalculable and inestimable value to JLI.

## DEFENDANTS' UNLAWFUL CONDUCT

32.     Subsequent to JLI's adoption and widespread use of its JLI Trademarks, Defendants worked in concert to market, distribute, and sell vaporizer devices, pod products, and accessories under the Juul Monster Trademarks.

33.     Defendant Juul Monster also filed a federal trademark application, U.S. Serial No. 88/106,306, for the Juul Monster logo design mark, on September 6, 2018. A true and correct status copy of this application is attached hereto as **Exhibit 2**. This design comprises a cartoon monster using a vaporizer device that is identical to JLI's registered mark, U.S. Registration No. 5,299,392, as attached in Exhibit 1.

34.     The Juul Monster logo design mark attached as Exhibit 2 and reproduced below, including in the various holiday formats found on Defendants' social media, is a colorful cartoon creature, sometimes in a festive situation, which appears to target children and teens below the minimum legal age to purchase e-cigarette products. The monster's small stature and impish expression also suggests that the character is himself a rebellious child or teen that enjoys using the product. In addition to directly contravening the federal government's public policy[7] and

---

[6] *See* Angelica LaVito, *E-cigarette sales are booming thanks to Juul*, CNBC.COM (Aug. 21, 2018), https://www.cnbc.com/2018/08/21/e-cigarette-sales-are-booming-thanks-to-juul.html.

[7] *See* FDA Statement*, Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes*, U.S. Food and Drug Administration (Nov. 15, 2018), https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm625884.htm ("The FDA will pursue the removal from the market of those ENDS products that are marketed to children and/or appealing to youth. **This could include using popular children's cartoon or animated**

advertising laws governing advertising to children, the selection and use of this cartoon design poses significant risk to JLI's reputation, as well as its campaign and related efforts to prevent illegal sales of its products to minors.

   

35.     In addition to designing and using a cartoon character logo design (in direct violation of the FDA's decree against such imagery), Defendants actively market the Juul Monster brand on social media, through (at least) Juul Monster and/or HotPodz accounts on Facebook (www.facebook.com/juulmonster/, www.facebook.com/hotpodz, and www.facebook.com/thepodking/),Twitter (www.twitter.com/juulmonster), and Instagram (www.instagram.com/juul_monster (*currently inactive*) and www.instagram.com/hot_podz). A representative screenshot of the Juul Monster Facebook page is below, and representative screenshots of other Juul Monster and related social media accounts are attached as **Exhibit 3**.

---

**characters**, or names of products favored by kids like brands of candy or soda.") (emphasis added.)



The use of social media is also aimed at younger consumers; in contrast, JLI voluntarily shut down its social media accounts as part of its continued efforts to prevent any appearance of promotion of its products to an underage audience.[8]

---

[8] *See* Susan Scutti, *Juul to eliminate social media accounts, stop retail sales of flavors,* CNN.com (Nov. 15, 2018), https://www.cnn.com/2018/11/13/health/juul-flavor-social-media-fda-bn/index.html.



36.     As seen in the above HotPodz Facebook post, Defendants also use the JUUL trademark to lure consumers into purchasing another company's vaporizer pod products, including in flavors that appear to be directed to young users (e.g. "green apple hard candy," "berry lemonade," etc.).

37.     Upon information and belief, Defendants registered and have hosted active retail websites at (at least) the domain names juulmonster.com and juulmegastore.com, both of which include JLI's JUUL trademark.

38.     Plaintiff JLI sent cease-and-desist letters to Defendants Juul Monster, Vanorski, and Status Vapes on December 6, 2018 and December 20, 2018, to which Defendants did not respond. Copies of these letters are attached hereto as **Exhibit 4**.

39.     At least one disgruntled consumer has experienced actual confusion between JLI and Juul Monster, contacting JLI's sales and legal departments regarding a problematic Juul

Monster online order from the www.juulmonster.com website. Copies of this consumer complaint correspondence is attached hereto as **Exhibit 5**.

40.      At least one additional consumer has outwardly expressed actual confusion on Defendant Juul Monster's Facebook page, mistakenly referring to Juul Monster as JLI.[9]

41.      Defendants' use of the Juul Monster Trademarks, which fully contain the JLI Trademarks, is proof of their intent to trade off of JLI's reputation and goodwill.

42.      On information and belief, Defendants had actual knowledge of the JLI Trademarks when they adopted the Juul Monster Trademarks, applied to register the Juul Monster logo design mark (on September 6, 2018), and applied to register the domain names juulmonster.com (on June 29, 2018) and juulmegastore.com (on October 8, 2018), and conducted all of these activities in order to reap the benefit and goodwill of the JLI Trademarks.

43.      On information and belief, Defendants worked in concert to promote, distribute, and sell e-cigarette products under the Juul Monster Trademarks.

44.      On information and belief, Defendant Juul Monster engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant Juul Monster is the business entity that markets and sells products under the Juul Monster Trademarks through (at least) the Juul Monster website located at www.juulmonster.com, the website located at www.hotpodz.com, the website located at www.thepodking.com, and the Juul Monster and/or HotPodz accounts on Facebook (www.facebook.com/juulmonster/, www.facebook.com/hotpodz, and www.facebook.com/thepodking/), Twitter (www.twitter.com/juulmonster), and Instagram (www.instagram.com/juul_monster (*currently inactive*) and www.instagram.com/hot_podz). Defendant Juul Monster has knowingly and intentionally organized, directed, authorized,

---

[9] *See* https://www.facebook.com/juulmonster/reviews/?referrer=page_recommendations_see_all&ref=page_internal ("Juul is dope af. A great smoking alternative"), attached as **Exhibit 6**.

approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

45.    On information and belief, Defendant K & R Products engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant K & R Products appears in the return shipping information for products ordered via the Juul Monster website, as seen in the photograph at **Exhibit 7**. Defendant K & R Products has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

46.    On information and belief, Defendant Status Distribution engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the JLI Trademarks. Specifically, Defendant Status Distribution shares the same corporate address and phone number as Defendants K& R Distribution and Status Vapes. Defendant Status Distribution has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

47.    On information and belief, Defendant Status Vapes engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant Status Vapes shares the same corporate address and phone number as Defendants K& R Distribution and Status Distribution. Defendant Status Vapes has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

48.    On information and belief, Defendant Vanorski engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant Vanorski is the signatory to Defendant Juul Monster's pending trademark application for the Juul Monster logo design, and is self-identified in that filing as the co-owner of Defendant Juul Monster. Defendant Vanorski is also the registered agent of Defendant K & R Distribution. Defendant Vanorski, in her individual capacity, has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

49.    On information and belief, Defendant Ryan Doka engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant Ryan Doka is the CEO and registered agent of Defendant Status Distribution, which shares the same Oak Ridge, New Jersey address as Defendant K & R Distribution. Upon information and believe, Defendant K & R Distribution is a partnership comprised of the individual Defendants Vanorski and Ryan Doka. Defendant Ryan Doka, in his individual capacity, has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

50.    On information and belief, Defendant Craig Doka engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant Craig Doka is associated with the same Oak Ridge, New Jersey address as Defendants K & R Distribution, Ryan Doka, and James Doka. Defendant Craig Doka, in his individual capacity, has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged

herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

51.     On information and belief, Defendant James Doka engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant James Doka is associated with the same Oak Ridge, New Jersey address as Defendants K & R Distribution, Ryan Doka, and Craig Doka, and is associated with the same phone number as Defendants Status Vapes and Quinto. Defendant James Doka, in his individual capacity, has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

52.     On information and belief, Defendant Jaclyn Quinto engaged and continues to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks. Specifically, Defendant Quinto is associated with the same phone number as Defendants Status Vapes and James Doka. Defendant Quinto, in her individual capacity, has knowingly and intentionally organized, directed, authorized, approved, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the Juul Monster Trademarks.

53.     On information and belief, the Defendants John Does 1 – 50 engaged and continue to engage in the promotion, distribution, and/or sale of e-cigarette products under the Juul Monster Trademarks.

54.     On information and belief, many of the e-cigarette products promoted, distributed, and/or sold under the Juul Monster Trademarks are in direct competition with JLI's products, sold to identical consumers, through identical channels of trade.

55.     Upon information and belief, Defendants' Juul Monster Trademarks were first used in the U.S. in April 2018, at which time JLI already had captured over 60 percent of the total e-cigarette market share.[10]

56.     JLI has not licensed or authorized Defendants to use any of the Juul Monster Trademarks.

### INJURY TO JUUL LABS

57.     Defendants' use of infringing trademarks, designed to be confusingly similar to JLI's, has injured and, if permitted to continue, will continue to irreparably injure JLI's business and the goodwill associated with JLI's trademarks, as well as JLI's reputation for providing high-quality electronic nicotine delivery system products.

58.     Defendants' actions are likely to cause confusion, mistake, or deception as to the source or origin of the goods sold by Defendants; are likely to falsely suggest a sponsorship, connection, license, or association between Defendants and JLI; and/or will divert profits from JLI. On information and belief, Defendants' products have been designed to cause, and have caused, actual confusion.

### COUNT I
### TRADEMARK INFRINGEMENT UNDER SECTION 32(1)
### OF THE LANHAM ACT (15 U.S.C. § 1114)

59.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

60.     Defendants' Juul Monster Trademarks fully incorporate the JLI Trademarks.

61.     The aforesaid willful and deliberate acts of Defendants are likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the goods offered by Defendants with JLI and its JLI Trademarks. On information and belief, Defendants' Juul

---

[10] *See* Richard Craver, *Juul exceeds 60 percent market share for e-cigs*, WINSTON-SALEM JOURNAL (May 1, 2018), https://www.journalnow.com/business/juul-exceeds-percent-market-share-for-e-cigs/article_1fd229f1-df7d-5436-ac90-9263c418dc1c.html.

Monster Trademarks have been designed deliberately to cause, and have caused, actual confusion.

62.     Defendants' continued use of the Juul Monster Trademarks in connection with e-cigarette products has caused, and will continue to cause, confusion, mistake, or deception of the public as to the source, sponsorship, or approval of those goods.

63.     JLI is the exclusive owner of the JLI Trademarks. JLI's United States trademark registrations for the JLI Trademarks are in full force and effect, as demonstrated by Exhibit 1.

64.     Upon information and belief, Defendants have knowledge of JLI's rights in the JLI Trademarks, and are willfully infringing and intentionally using the infringing Juul Monster Trademarks.

65.     Defendants' willful and deliberate actions constitute willful direct and contributory infringement of JLI's federally-registered JLI Trademarks, in violation Section 32 of the Lanham Act, 15 U.S.C. § 1114.

66.     The injuries and damages sustained by JLI have been directly and proximately caused by Defendants' wrongful advertisement, promotion, offering to sell, and sale of products under the infringing Juul Monster Trademarks.

<u>COUNT II</u>
**INFRINGEMENT OF THE JLI TRADEMARKS AND UNFAIR COMPETITION
UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT
(15 U.S.C. § 1125(a))**

67.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

68.     Plaintiff is the owner of all right and title to the federally registered JUUL word trademark, the federally registered JUUL stylized trademark, and the federally registered Juul Device design trademark.

69.     Defendants have misappropriated the JLI Trademarks by including them in their Juul Monster Trademarks, and by displaying these marks on their various retail websites.

70.     Defendants' promotion and sale of e-cigarette products under the Juul Monster Trademarks, which comprise the JLI Trademarks, enables Defendants to unfairly take advantage of JLI's reputation and success.

71.     The aforesaid willful and deliberate acts of Defendants are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the goods offered by Defendants with JLI and its JLI Trademarks, and thus constitute false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a). On information and belief, Defendants' products have been designed to cause, and have caused, actual confusion.

72.     JLI has no adequate remedy at law and, if Defendants' actions are not enjoined, JLI will continue to suffer irreparable harm to its reputation and the associated goodwill of the JUUL brand.

## COUNT III
## CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)

73.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

74.     Upon information and belief, Defendants registered and hosted active retail websites at (at least) the domain names juulmonster.com and juulmegastore.com, both of which include JLI's federally-registered JUUL trademark.

75.     Defendants have no trademark or intellectual property rights in JLI's federally-registered JUUL trademark.

76.     Defendants have a bad faith intent to profit from use of the domain names juulmonster.com and juulmegastore.com, as evidenced by the foregoing allegations.

77.     The JUUL trademark was distinctive and federally-registered at the time that Defendants registered and began using the domain names at issue.

78.     JLI is entitled to an order and injunction immediately transferring the juulmonster.com and juulmegastore.com domain names to JLI.

## COUNT IV
## UNFAIR COMPETITION (N.J.S.A. 56:4-1)

79.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

80.     JLI owns the registered JLI Trademarks, which are distinctive and widely recognized by the consuming public.

81.     JLI's products are sold and purchased throughout the United States, including in New Jersey.

82.     JLI is widely recognized as the designated source of goods bearing the registered JLI Trademarks.

83.     Upon information and belief, and through the acts described above, in the course of conducting business, Defendants knowingly engaged in unfair acts or practices and unfair method of competition, including but not limited to making false representations as to an origin affiliation, connection and/or association with JLI and by using marks and designs identical and/or confusingly similar to the JLI Trademarks in bad faith, and otherwise engaging in deceptive trade practices, in violation of N.J.S.A. 56:4-1.

84.     JLI has no adequate remedy at law, and if Defendants' infringement and unfair competition are not enjoined, JLI will continue to suffer irreparable harm to the name, reputation, and goodwill of the JLI Trademarks.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

85.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

86.     Through the foregoing conduct, Defendants' knowing and willful infringement of the JLI Trademarks is likely to cause confusion, mistake, and deception among consumers, who believe that the products sold by Defendant are identical to and endorsed by JLI.

87.     Defendants' unauthorized and unlawful actions constitute common law trademark infringement and unfair competition.

88.     As a result of Defendants' unauthorized and unlawful actions, the reputation of the JLI Trademarks have been harmed and JLI continues to suffer immediate and irreparable injury.

89.     Further, JLI has suffered damages, including, but not limited to, loss of sales, trademark infringement, loss of goodwill associated with its products, and damage to its existing and potential business relationships.

90.     JLI has no adequate remedy at law, and if Defendants' infringement and unfair competition are not enjoined, JLI will continue to suffer irreparable harm to the name, reputation, and goodwill of the JLI Trademarks.

<u>COUNT VI</u>
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

91.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

92.     Defendants' actions have disrupted or are intended to disrupt JLI's business by, among other things, diverting consumers away from JLI's products and to Defendants' products, through using marks identical and/or confusingly similar to the JLI Trademarks.

93.     In doing so, Defendants have gained access to JLI's customers, as to which JLI had a reasonable expectation of economic benefit. JLI has lost sales because of Defendants' infringement.

94.     Defendants knew or should have known about JLI's expected economic benefit. Defendants have no legal right, privilege or justification for their conduct. Absent Defendants' wrongful and deceptive conduct, JLI would have made sales that Defendants have made instead.

95.     Based on the intentional, willful, and malicious nature of Defendants' actions, JLI is entitled to recover monetary damages, exemplary or punitive damages, and reasonable attorneys' fees and costs incurred in connection with this action.

96.     JLI has no adequate remedy at law, and if Defendants' intentional interference with JLI's prospective economic advantage is not enjoined, JLI will continue to suffer monetary damages and irreparable injury to the name, reputation, and goodwill of the JLI Trademarks.

## COUNT VII
## UNJUST ENRICHMENT

97.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

98.     Through the foregoing conduct, Defendants have been unjustly enriched through their misuse of the JLI Trademarks.

99.     Defendants have obtained a monetary and reputational benefit through their misuse of the JLI Trademarks, including but not limited to sales of its infringing product in the marketplace.

100.     Defendants knew of or should reasonably have known that JLI owned and had rights in the JLI Trademarks.

101.     Defendants obtained these monetary and reputational benefits without compensation to JLI.

102.     The acts complained of above constitute unjust enrichment of Defendants at JLI's expense, in violation of the common law of the State of New Jersey.

103.     JLI has no adequate remedy at law, and if Defendants' unjust enrichment is not enjoined, JLI will continue to suffer irreparable harm to the name, reputation, and goodwill of the JLI Trademarks.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION

104.    Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

105.    Defendants, jointly and severally, and without Plaintiff's consent and authorization, have engaged in the deliberate and fraudulent promotion, advertising, distribution, selling and/or offering for sale of products under the JLI Trademarks, through their websites and elsewhere.

106.    Defendants, jointly and severally, and without Plaintiff's consent and authorization, knowingly, intentionally, and falsely misrepresented to the public that they were affiliated with, or sponsored or otherwise endorsed by JLI, and made further misrepresentations about the use and performance of JLI's products.

107.    The false and fraudulent misrepresentations of Defendants, all of which were material, were undertaken with the knowledge and intent that unsuspecting consumers would be deceived into believing and relying upon said misrepresentations, and that said representations were authorized by JLI.

108.    JLI has been injured in its business, property, and reputation and such injury also is irreparable as a result of Defendants' unlawful, fraudulent, and infringing actions as alleged herein, which were intentional, malicious, and willful. Those members of the public who have been deceived by Defendants' misconduct may use JLI's products believing Defendants' misrepresentations, and thereby misuse JLI's products to their potential detriment. Such consequences to the public and JLI are immeasurable and incalculable.

109.    JLI has no adequate remedy at law, and if Defendants' fraudulent misrepresentation is not enjoined, JLI will continue to suffer irreparable harm to the name, reputation, and goodwill of the JLI Trademarks.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

110.    Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

111.    Defendants, without JLI's consent and authorization, have engaged in the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the JLI Trademarks.

112.    Defendants have, at minimum, negligently held themselves out as having the right to make representations about the use and performance of JLI's products. Defendants have negligently misrepresented JLI's position regarding the use and performance of JLI's products. An unsuspecting consumer, directly relying on said misrepresentations, could misuse JLI's products based on Defendants' misrepresentations, which could potentially cause injury to members of the public who were deceived into misusing said products.

113.    JLI has been injured in its business, property, and reputation, and such injury also is irreparable as a result of Defendants' unlawful, fraudulent, and infringing actions as alleged herein.

114.    JLI has no adequate remedy at law, and if Defendants' negligent misrepresentation is not enjoined, JLI will continue to suffer irreparable harm to the name, reputation, and goodwill of the JLI Trademarks.

## COUNT X
## INDIVIDUAL LIABILITY OF KRISTEN VANORSKI

115.    Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

116.    Defendant Vanorski knowingly and significantly organized, directed, or otherwise participated in the unlawful, infringing and tortious conduct alleged herein, including the

deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the infringing Juul Monster Trademarks.

117.    Defendant Vanorski is personally liable in this action because she knowingly and intentionally authorized, directed, and approved the unlawful acts and the misconduct alleged herein.

118.    JLI has been injured and damaged in its business, property, and reputation, and such injury and damage also are irreparable as a result of Defendant Vanorski's unlawful, fraudulent, tortious, and infringing actions as alleged herein, which were intentional, malicious, and willful.

## COUNT XI
## INDIVIDUAL LIABILITY OF RYAN DOKA

119.    Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

120.    Defendant Ryan Doka knowingly and significantly organized, directed, or otherwise participated in the unlawful, infringing and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the infringing Juul Monster Trademarks.

121.    Defendant Ryan Doka is personally liable in this action because he knowingly and intentionally authorized, directed, and approved the unlawful acts and the misconduct alleged herein.

122.    JLI has been injured and damaged in its business, property, and reputation, and such injury and damage also are irreparable as a result of Defendant Ryan Doka's unlawful, fraudulent, tortious, and infringing actions as alleged herein, which were intentional, malicious, and willful.

## COUNT XII
### INDIVIDUAL LIABILITY OF CRAIG DOKA

123.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

124.     Defendant Craig Doka knowingly and significantly organized, directed, or otherwise participated in the unlawful, infringing and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the infringing Juul Monster Trademarks.

125.     Defendant Craig Doka is personally liable in this action because he knowingly and intentionally authorized, directed, and approved the unlawful acts and the misconduct alleged herein.

126.     JLI has been injured and damaged in its business, property, and reputation, and such injury and damage also are irreparable as a result of Defendant Craig Doka's unlawful, fraudulent, tortious, and infringing actions as alleged herein, which were intentional, malicious, and willful.

## COUNT XIII
### INDIVIDUAL LIABILITY OF JAMES DOKA

127.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

128.     Defendant James Doka knowingly and significantly organized, directed, or otherwise participated in the unlawful, infringing and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the infringing Juul Monster Trademarks.

129.     Defendant James Doka is personally liable in this action because he knowingly and intentionally authorized, directed, and approved the unlawful acts and the misconduct alleged herein.

130.     JLI has been injured and damaged in its business, property, and reputation, and such injury and damage also are irreparable as a result of Defendant James Doka's unlawful, fraudulent, tortious, and infringing actions as alleged herein, which were intentional, malicious, and willful.

### COUNT XIV
### INDIVIDUAL LIABILITY OF JACLYN QUINTO

131.     Plaintiff hereby realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

132.     Defendant Jaclyn Quinto knowingly and significantly organized, directed, or otherwise participated in the unlawful, infringing, and tortious conduct alleged herein, including the deliberate and fraudulent promotion, advertising, distribution, selling, and/or offering for sale of products under the infringing Juul Monster Trademarks.

133.     Defendant Jaclyn Quinto is personally liable in this action because she knowingly and intentionally authorized, directed, and approved the unlawful acts and the misconduct alleged herein.

134.     JLI has been injured and damaged in its business, property, and reputation, and such injury and damage also are irreparable as a result of Defendant Jaclyn Quinto's unlawful, fraudulent, tortious, and infringing actions as alleged herein, which were intentional, malicious, and willful.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff JLI requests entry of judgment against Defendants as follows:

A.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, dealers, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from offering for sale, promoting, and advertising nicotine vaporizer, e-cigarette, and related products in

connection with the Juul Monster Trademarks, or any mark, name, or trade dress confusingly similar to the JLI Trademarks;

B.      Requiring that Defendants surrender, pursuant to 15 U.S.C. § 1118 and/or 17 U.S.C. § 503, for destruction all merchandise, advertisement and promotional materials, signage, and all other materials that bear the Juul Monster Trademarks, or any mark, name, or trade dress confusingly similar thereto, in any form or in any manner, or infringe upon the JLI Trademarks;

C.      Requiring that Defendants, pursuant to 15 U.S.C. § 1117, account to Plaintiff in the said Report for any and all profits, gains, and advantages derived from the willful and unauthorized use of the Juul Monster Trademarks, or any mark, name, or trade dress confusingly similar to the JLI Trademarks;

D.      Requiring that Defendants, pursuant to 15 U.S.C. § 1119, immediately file an express abandonment of U.S. Trademark Application No. 88/106,306;

E.      Requiring that Defendants, pursuant to 15 U.S.C. § 1125(d), immediately transfer the domain names juulmonster.com and juulmegastore.com to Plaintiff;

F.      Requiring that Defendants, pursuant to 15 U.S.C. § 1117 and/or N.J.S.A. 56:4-2, pay to Plaintiff all profits obtained by Defendants based on their unlawful, willful and unauthorized use of the Juul Monster Trademarks, or any mark, name, or trade dress confusingly similar to the JLI Trademarks;

G.      Awarding compensatory, consequential, statutory, special, and/or punitive damages, including treble damages, to Plaintiff in an amount to be determined at trial;

H.      Awarding interest, costs, and attorneys' fees incurred by Plaintiff in prosecuting this action; and

I.      Awarding any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial to a jury on all issues so triable.

Date:  February 21, 2019                    Respectfully submitted,


                                           **SAIBER LLC**
                                           Attorneys for Plaintiff Juul Labs, Inc.

                                           By: /s Arnold B. Calmann
                                           Arnold B. Calmann
                                           Jakob B. Halpern
                                           One Gateway Center
                                           10th Floor, Suite 1000
                                           Newark, New Jersey 07102
                                           Tel.: 973.622.3333
                                           Fax: 973.286.2465


                                           Dennies Varughese, Pharm.D.
                                           Monica Riva Talley
                                           Dana N. Justus
                                           Charles T. Wysocki
                                           **STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.**
                                           1100 New York Ave., N.W., Suite 600
                                           Washington, D.C. 20005-3934
                                           Tel.: 202.371.2600
                                           Fax: 202.371.2540

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, the undersigned counsel hereby certifies that this matter in controversy is the subject of other matters pending in this Court: ***Juul Labs, Inc. v. King Distribution LLC et al.***, **Civil Action No. 18-9233**, before the Hon. Susan D. Wigenton, U.S.D.J.; ***Juul Labs, Inc. v. HugeTrunk.com et al.***, **Civil Action No. 18-10281**, before the Hon. Esther Salas, U.S.D.J.; and ***Juul Labs, Inc. v.4X Pods et al.***, **Civil Action No. 18-15444**, before the Hon. Kevin McNulty, U.S.D.J.

Date:  February 21, 2019

SAIBER LLC
Attorneys for Plaintiff Juul Labs, Inc.


By: /s Arnold B. Calmann
Arnold B. Calmann
Jakob B. Halpern
One Gateway Center
10th Floor, Suite 1000
Newark, New Jersey 07102
Tel.: 973.622.3333
Fax: 973.286.2465

Dennies Varughese, Pharm.D.
Monica Riva Talley
Dana N. Justus
Charles T. Wysocki
STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
1100 New York Ave., N.W., Suite 600
Washington, D.C. 20005-3934
Tel.: 202.371.2600
Fax: 202.371.2540

## <u>LOCAL CIVIL RULE 201.1 CERTIFICATION</u>

Under Local Civil Rule 201.1, the undersigned counsel for Plaintiff Juul Labs, Inc.

hereby certifies that it seeks both monetary damages greater than $150,000 and injunctive and

other equitable relief, and therefore this action is not appropriate for compulsory arbitration.

Date:  February 21, 2019                  **SAIBER LLC**
                                          Attorneys for Plaintiff Juul Labs, Inc.


                                          By: /s Arnold B. Calmann
                                          Arnold B. Calmann
                                          Jakob B. Halpern
                                          One Gateway Center
                                          10th Floor, Suite 1000
                                          Newark, New Jersey 07102
                                          Tel.: 973.622.3333
                                          Fax: 973.286.2465


                                          Dennies Varughese, Pharm.D.
                                          Monica Riva Talley
                                          Dana N. Justus
                                          Charles T. Wysocki
                                          **STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.**
                                          1100 New York Ave., N.W., Suite 600
                                          Washington, D.C. 20005-3934
                                          Tel.: 202.371.2600
                                          Fax: 202.371.2540

## VERIFICATION OF VERIFIED COMPLAINT

I, Matthew J. Hult, under penalty of perjury of the laws of the United States declare:

I am employed by Juul Labs, Inc. as Senior Director, Intellectual Property and I have read, and am familiar with, and have personal knowledge of the contents of the foregoing Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within my personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that I am informed that the facts stated therein are true and correct.

Executed on February 20, 2019.

_Matthew J. Hult_

_____
Matthew Hult
Senior Director, Intellectual Property
Juul Labs, Inc.